JAMES S. WALL *vs.* GEORGE S. LAKIN & another.
THE SAME *vs.* CHARLES CHOATE & another.

The provision in *St.* 1841, *c.* 124, § 3, that the assignee of an insolvent debtor, in certain cases, may recover, from a creditor of such debtor, the property, or the full value of any property, assigned, sold, transferred or conveyed to the creditor by such debtor. with intent to give a preference to the creditor, does not extend to money paid by such debtor, though paid with intent to prefer the creditor: Money paid by such debtor, with such intent, cannot be recovered back by his assignee, by virtue of said statute, although the creditor, when he received the money, also purchased goods of such debtor, knowing him to be insolvent.

THESE were actions of assumpsit for money had and received of Jacob Anthony, by the defendants, to the plaintiff's use. Trial before *Dewey*, J. whose report thereof was as follows :

In the *first* of these cases, the plaintiff proposed to show that said Jacob Anthony, who had resided many years at

Northampton, in the county of Hampshire, left the Common-wealth in February 1846, and went to Utica in the State of New York, carrying with him a considerable amount of money, and also a large quantity of goods, consisting of boots and shoes; that he left secretly, and with intent to defraud his creditors; that he was, at that time, insolvent, or in con-templation of insolvency; that the defendants, being his creditors, went in pursuit of him, in April 1846, found him at or near said Utica, demanded of him payment of their debt, and that he thereupon paid them $800 in money, in discharge of said debt.

The plaintiff offered further to show, that the defendants, when they received said $800, had reasonable cause to believe that said Anthony was insolvent; that on the 8th of April 1846, a creditor of said Anthony applied to a master in chancery, in the county of Hampshire, for a warrant against said An-thony's estate, under the insolvent laws, and that a warrant was issued accordingly, and the plaintiff legally chosen as-signee of said estate.

The plaintiff insisted that, upon proof of the foregoing facts, he would be entitled, by virtue of *St.* 1841, *c.* 124, § 3, to recover of the defendants the money received by them as above stated.

The defendants (denying that said Anthony was in fact insolvent, or that they had reasonable cause to believe him to be so, when they received said payment,) contended that this action could not be maintained, if the facts offered to be proved were established. " 1st. Because a payment of money to the defendants, which was received by them in payment of a debt due them, was not a case within that clause of *St.* 1841, *c.* 124, § 3, authorizing assignees of an insolvent debtor to re-cover the value of property transferred, or the property trans-ferred, in the hands of a preferred creditor. 2d. Because the receipt of money from an absconding debtor, in the State of New York, by a creditor thus pursuing him, and obtaining the money from him, in payment of a debt, was not a case within the provisions of the statute aforesaid."

The plaintiff offered no evidence with a view to maintain the action upon *St.* 1838, *c.* 163, § 10, and did not contend that he was entitled to recover by the provisions of that statute.

The judge proposed to rule in favor of the defendants, upon their first ground of defence above stated, and the case was then taken from the jury, by consent, under an agreement that the plaintiff should be nonsuit, if, in the opinion of the whole court, the defence could be sustained upon either ground taken by the defendants, supposing all the facts proved which the plaintiff offered to prove ; otherwise, that a new trial should be granted.

In the *second* of these cases, the payment of the money was admitted by the defendants, and under the same circumstances as were alleged by the plaintiff in the preceding case. The only additional fact proposed to be proved in this case was, that the defendants, at the same time when they received the money sought to be recovered in this action, received, by way of purchase, a quantity of boots and shoes, the price of which was allowed by them in payment of a debt due from said Anthony to them.

This case also was taken from the jury, under an agreement similar to that above mentioned in the first of these cases.

*B. F. Thomas*, for the plaintiff.

*C. Allen*, for the defendants.

DEWEY, J. By the principles of the common law, a payment made by an insolvent debtor to his creditor might legally be received and retained, although, at the time of receiving such payment, the creditor had reason to believe the debtor insolvent and unable to pay all his debts. Such payment could not be recalled for the purpose of restoring the amount thus paid to the general fund for distribution among all the creditors. It is incumbent upon the plaintiff, therefore, if he would sustain the present actions, to establish his right to reclaim the money, paid to the defendants, by some statute enactment. The *St.* of 1838, *c.* 163, it is conceded by the plaintiff's counsel, does not embrace the present case ; the facts here found being wholly insufficient to bring the case

within the provisions of the 10th section of that statute. To do so, it would be necessary to show that the payment was made by the debtor in contemplation of becoming an insolvent debtor, and of obtaining a discharge under the provisions of that act. *Gorham* v. *Stearns,* 1 Met. 366. That section does, in direct terms, embrace the case of payment of a debt with a view of giving a preference to a creditor; and if the other fact, required by that section, had existed, viz. that the payment, with a view to a preference, was made in contemplation of obtaining a discharge under that act, the present actions might have been sustained.

If any statute provision exists, authorizing the maintenance of these actions, it must be found in *St.* 1841, *c.* 124, § 3. This statute introduced some material modifications of the *St.* of 1838, *c.* 163. It enlarged the provisions of that statute, so as to extend the same to any applicant whose debts exceeded two hundred dollars. It further declared (§ 3) that the debtor should not be entitled to a discharge " if, within six months before the filing of the petition by or against him," " being insolvent or in contemplation of insolvency, he shall make any assignment, sale, transfer, or conveyance, either absolute or conditional, of any part of his estate, real or personal, intending to give a preference to a preëxisting creditor, or to any person who is or may be liable as indorser or surety for such debtor, unless said debtor shall make it appear that, at the time of making such preference, he had reasonable cause to believe himself solvent; and all preferences, so made or intended to be made, shall, as to the other creditors, be void; and the assignees may recover the full value of the property so transferred, or the property itself, from the creditor so preferred, provided the creditor, when accepting such preference, had reasonable cause to believe such debtor was insolvent." This section materially modifies the former statute as to the necessity of showing that the debtor, at the time of making the preference, had in contemplation the purpose of obtaining his discharge under the insolvent law. Actual insolvency, the creditor having reasonable cause to believe the

debtor insolvent, is sufficient to authorize the assignee to recover the property transferred by way of preference. But the further inquiry is as to the cases embraced within the provisions of this third section. Does it embrace the case of a payment, in money, of a debt due to a creditor? Upon an examination, there will be found, in *St.* 1841, *c.* 124, no provision declaring the payment of a debt by an insolvent, in money, to be illegal, or authorizing an action by the assignee against such creditor to recover back the same, for distribution among all the creditors. Either designedly, or otherwise, the case of such payment of a debt is wholly omitted in this statute. It was introduced into the *St.* 1838, *c.* 163, § 10, by direct words, and such payment of money, if made in contravention of that statute, was recoverable by the assignee.

In framing the *St.* of 1841, *c.* 124, the previous *St.* of 1838, *c.* 163, must have been fully known and understood. Indeed, to a great extent, it would seem to have been copied, in its language, in *St.* 1841, *c.* 124; but the clause found in *St.* 1838, as to "payments" by an insolvent debtor, is wholly omitted in the statute of 1841, and, under the circumstances of the case, we must suppose designedly omitted, as one of the cases which would authorize a recovery by the assignee, under that act; leaving in force the right to recover back money paid by an insolvent debtor in contemplation of insolvency, and obtaining a discharge under the act of 1838, if the creditor receiving such payment knows the purpose of the debtor.

It was strongly urged upon us, at the argument, that it was against the whole policy of the insolvent laws thus to allow a payment to an individual creditor to be retained by him to his own use. If we look merely at the principle of equitable distribution of the whole assets among all the creditors *pro rata*, it would seem to be in derogation of that principle. But there are other considerations favoring the construction we have given. A different rule might be found to operate with great practical inconvenience in its application to payments made in the usual course of business. Many cases occur, of

traders and other persons, who do business, while there is a strong public impression, that if their debts were at once all demanded, there might not be assets sufficient to pay them; yet who continue to pay such debts as are most strongly pressed, hoping to survive their embarrassment, and by bet-ter success in business eventually to discharge their entire indebtedness. Whether it would be sound policy to disturb such payments may certainly be somewhat questionable.

We, however, place our decision, in the present case, upon the ground that the case of payment, in money, of an ex-isting debt, by an insolvent debtor, is not among the cases embraced within the provisions of § 3 of *St.* 1841, *c.* 124. There is, therefore, no statute provision which will authorize us to sustain the present action.

Upon the other point raised in the defence, that all the acts done by the defendants were done in the State of New York, and therefore not to be affected by our statutes, we give no opinion.

In the *second* of these cases, there is a fact not existing in the first, namely, that the defendants, when they received money in part payment of an existing debt, also purchased a quantity of shoes, the price of which was allowed by them in further payment of their debt. This fact can have no ten-dency to charge the defendants in this action, which is insti-tuted solely to recover the money paid by the debtor to them on account of his indebtedness.

*Plaintiff nonsuit in both cases.*